IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-cv-00694 |
| v. | ) |
| | ) Judge Jeremy C. Daniel |
| CITY OF CHICAGO, et al., | ) Magistrate Judge Jeannice W. Appenteng |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Marshall filed this civil rights lawsuit alleging that he served 30 years in prison for a murder and sexual assault that he did not commit. He claims that police officers under the command of Jon Burge tortured him at Area 3 in Chicago and coerced him into confessing to the crimes. Currently before the Court are plaintiff's motions for a protective order and to compel discovery, Dkts. 120, 121. For the reasons below, the motion for protective order is granted in part and denied in part, and the motion to compel is denied.

## DISCUSSION

### I. Motion for Protective Order

Plaintiff's motion for protective order concerns two categories of information that defendants requested or plan to request pursuant to document subpoenas. First, defendants have asked plaintiff to sign their proposed Qualified HIPAA and MHDDCA Protective Order, Dkt. 133 at 5, so that they can subpoena plaintiff's medical records from the Illinois Department of Corrections ("IDOC"), Cook County

Department of Corrections ("CCDOC"), and other medical providers disclosed in discovery. Second, defendants issued subpoenas for recordings of telephone calls that plaintiff made while incarcerated with IDOC and CCDOC and seek to review all of those conversations. Dkts. 121-1, 121-2, 133-2, 133-3. Plaintiff argues that the subpoenas should either be quashed or his counsel should be allowed a first review of all the medical records and telephone calls to decide whether to assert any privileges.

### A. Standard of Review

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). Rule 26 also allows the Court to issue a protective order, limiting discovery to protect a party from embarrassment, oppression, or undue burden or expense. FED. R. CIV. P. 26(c)(1).

The party seeking a protective order has the burden of demonstrating good cause with "a particular and specific demonstration of fact." *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 CV 50107, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020) (citations omitted). District courts have broad discretion to manage discovery, but the Seventh Circuit advises that "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material

2

sought against the burden of providing it.'" *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

### B. Analysis

#### 1. Mental Health Records

Plaintiff does not object to producing medical records related to his physical conditions but argues that his mental health records are protected by the psychotherapist-patient privilege. Dkt. 121 at 3. Though plaintiff "doubts that any health care provider will produce documents relating to mental health care treatment," he wants the opportunity to conduct a privilege review of the records before producing them to defendants. *Id.*; Dkt. 139 at 4.

The Supreme Court has found that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The privilege is not absolute, however, and can be waived. *Id.* at 15 n.14. At issue here is whether plaintiff has impliedly waived the psychotherapist-patient privilege by placing his mental condition at issue in the case. *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) ("If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state.").

Courts use three approaches to determine when a plaintiff's allegations meet the "at issue" threshold: (1) a broad approach; (2) a narrow approach; and (3) a

3

middle ground approach. *Coleman v. City of Chicago*, No. 17 CV 8696, 2019 WL 7049918, at *1 (N.D. Ill. Dec. 23, 2019). Based on this Court's review of available cases, most courts in this district employ either the broad approach or the middle ground approach. Under the broad approach, a plaintiff waives the privilege by seeking emotional distress damages of any kind. *Taylor v. City of Chicago*, No. 14 CV 737, 2016 WL 11945123, at *4 (N.D. Ill. May 2, 2016) ("[A] plaintiff who has elected to seek emotional distress damages cannot fairly prevent discovery into evidence relating to this element of the claim."). Under the middle ground approach, a plaintiff only waives the privilege if he seeks more than mere "garden variety damages." *Coleman*, 2019 WL 7049918, at *1.

Here, plaintiff has alleged that he falsely confessed to the sexual assault and murder of his 14-year-old stepdaughter because defendants "physically and mentally tortured" him for more than 24 hours. Dkt. 79, First Amended Complaint, ¶¶ 1, 7-12, 21. He argues that as a result of defendants' alleged misconduct, he "lost his liberty for 30 years, suffered physical pain and suffering, suffered a loss of a normal life, lost income and potential income, and suffered other serious and continuing injuries." *Id*. ¶¶ 151, 170, 180, 194, 201, 210, 218.[1] These allegations, together with plaintiff's acknowledgment that he is seeking garden variety emotional distress damages, Dkt. 121 at 3-4, suffice to place his mental health at issue under the broad approach to waiver, which this Court generally adopts. *See*

---

[1] Plaintiff's original complaint went further, alleging that he "suffered great mental anguish, emotional suffering, humiliation, [and] degradation." Dkt. 1, Complaint, ¶¶ 150, 169, 179, 193, 200, 209.

4

*Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 515-16 (N.D. Ill. 2018) (adopting the broad approach); *Gillespie v. Boudreau*, No. 24 CV 8019, Dkt. 118 (N.D. Ill. July 24, 2025).

Even under the middle ground approach, the Court would find waiver in this case. It is difficult to conceive how plaintiff could "transform" his claims of torture, wrongful incarceration for 30 years, and loss of a normal life into "garden variety" distress. *Taylor*, 2016 WL 11945123, at *9 ("Undoubtedly a jury could and likely would conclude that Plaintiff suffered severe and ongoing emotional distress" by being "imprisoned . . . for 20 years - isolated from family and friends and unable to enjoy the prime years of his life - for a crime he did not commit."). In such circumstances, plaintiff's purported agreement to seek only garden variety emotional damages, Dkt. 121 at 3-4; Dkt. 139 at 3, is both impractical and incredible.

Since plaintiff has placed his mental health at issue in this case, his motion for a protective order as to his medical records is denied. In their response brief, defendants assert a "cross-motion for entry of a protective order," Dkt. 133 at 7 n.3, which is granted.

### 2. Prison Telephone Calls

Plaintiff also seeks a protective order relating to his prison telephone calls. In response to defendants' subpoenas, IDOC produced logs showing plaintiff made 60 calls during his incarceration. CCDOC produced both the logs and recordings for the five calls plaintiff made while in the Cook County Jail. Dkt. 133 at 2-3. Plaintiff

5

argues that he has a privacy right in the calls such that the subpoenas should be quashed in their entirety and defendants should be prevented from listening to the recordings. Dkt. 121 at 2. Alternatively, plaintiff proposes that his counsel be permitted to conduct a first listen of all the recordings so he can determine whether to assert any objections. *Id*. at 3.

An incarcerated person's privacy interest in recordings of his phone calls from prison is reduced but not non-existent. *See, e.g., Velez v. City of Chicago*, No. 18 CV 8144, 2021 WL 3231726, at *3 (N.D. Ill. July 29, 2021) (plaintiff knew, or should have known, that his calls were being monitored or recorded, so "his claimed privacy interest is . . . greatly minimized."); *Bishop v. White*, No. 16 CV 6040, 2020 WL 6149567, at *4 (N.D. Ill. Oct. 20, 2020) ("Plaintiff is entitled to some degree of privacy in the personal content of those conversations, even though he knew others could listen to, and record, those conversations because he was in jail.").[2] In determining whether plaintiff's phone recordings should be produced, the Court weighs the "privacy burden" on plaintiff against the relevance and benefit of the materials. *In re Watts Coordinated Pretrial Proceedings*, No. 19 CV 1717, 2024 WL 3470596, at *4 (N.D. Ill. July 19, 2024) (citing *Rodriguez v. City of Chicago*, No. 18 CV 7951, 2021 WL 2206164, at *2 (N.D. Ill. June 1, 2021)).

Within this district, courts "have permitted discovery of IDOC recordings where evidence already in hand is sufficient to show that certain recordings (*e.g.*,

---

[2] "Numerous courts in this district have found that prisoners have a sufficient privacy interest in their recorded telephone calls to support standing." *In re Watts Coordinated Pretrial Proceedings*, No. 19 CV 1717, 2024 WL 3470596, at *3 (N.D. Ill. July 19, 2024) (collecting cases).

with particular persons and/or during specific time periods) 'probably' contain relevant information and the subpoenas are narrowly tailored to seek only that subset of recordings." *In re Watts*, 2024 WL 3470596, at *6 (quoting *Rodriguez*, 2021 WL 2206164, at *2; *DeLeon-Reyes v. Guevara*, No. 18 CV 1028, 2020 WL 705944, at *5 (N.D. Ill. Dec. 2, 2020)) ("[I]n order to overcome a prisoner's privacy interest in the recordings of her telephone calls, the subpoenaing party must offer more than mere speculation that the recordings could house relevant evidence.").

Defendants argue that all 65 calls that plaintiff made throughout his 30 years of incarceration are relevant to assess his claim for emotional damages. The theory appears to be that since most if not all of the calls were directed to plaintiff's sons, father, stepdaughter, and friends, the conversations likely "shed light on Plaintiff's experience while incarcerated and will contain admissions as to what was going on with Plaintiff and his experience." Dkt. 133 at 3, 6-7. While it is certainly *possible* that plaintiff discussed his mental state during one or more of the phone calls, defendants offer nothing to suggest that such conversations "probably" occurred. Defendants' mere speculation in that regard is not sufficient. *See, e.g., In re Watts*, 2024 WL 3470596, at *11 (granting motion to quash subpoenas for IDOC recordings where "Defendants only speculate that the five calls contain relevant content about damages."); *Simon v. Northwestern Univ.*, No. 15 CV 1433, 2017 WL 66818, at *4 (N.D. Ill. Jan. 6, 2017) (subpoena for 15 years of phone call recordings the plaintiff made to family members, friends, and other third parties was a "broad fishing expedition" akin to "throwing darts in the dark."); *DeLeon-Reyes*, 2020 WL

7

7059444 (quashing subpoena for all of the plaintiff's IDOC telephone calls from "2019 to present.").

To be clear, the Court is not requiring defendants to identify specific recordings containing relevant content. *See, e.g., Pursley v. City of Rockford*, No. 18 CV 50040, 2020 WL 1433827, at *4 (N.D. Ill. Mar. 24, 2020) (declining to require the defendants to identify "specific recordings or dates."); *Simon*, 2017 WL 66818, at *4 (defendants cannot be expected to issue subpoenas "identify[ing] specific calls with specific details as to why the call would be discoverable," as this would "turn the discovery process on its head."). Rather, defendants must produce some evidence "already in hand" to show that the requested recordings probably document something relevant. *Rodriguez*, 2021 WL 2206164, at *2. Such evidence is lacking here, where defendants are seeking to listen to all 65 calls but acknowledge that plaintiff disclosed only three individuals (two sons and one friend) as damages witnesses. Dkt. 133-5, Pl's Answers to First Set of Interrogatories, ¶ 3.

On the record presented, the Court finds that the burden of discovery of all 65 telephone recordings outweighs the likely benefit and so is not proportional to the needs of the case. Plaintiff's motion for protective order as to the calls is therefore granted. This ruling does not preclude defendants from seeking to review a narrow subset of recordings as appropriate.

**II.  Motion to Compel**

In his motion to compel, plaintiff seeks documents responsive to his First Request for Production of Documents ("RFP") 13 and 14. A party may file a motion

8

to compel under Rule 37 when another party provides an insufficient response to a discovery request. *Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, No. 21 CV 6890, 2025 WL 889480, at *1 (N.D. Ill. Mar. 17, 2025) (citing FED. R. CIV. P. 37(a)). "District courts enjoy broad discretion when considering motions to compel." *Id*.

Plaintiff argues that both RFPs seek information that is relevant under Federal Rule of Evidence 404(b). Paragraph (b)(1) states that evidence of "'other crime[s], wrong[s], or act[s]' is inadmissible if offered for a propensity purpose: 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *Jackson v. Esser*, 105 F.4th 948, 963 (7th Cir. 2024) (quoting FED. R. EVID. 404(b)(1)). But under paragraph (b)(2), such other-acts evidence is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2)). Since the evidence "is susceptible to use for multiple purposes, prohibited and permissible, we only admit it when it is relevant to another purpose 'without relying on a propensity inference.'" *Jackson*, 105 F.4th at 963 (quoting *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014)).

A. RFP 13

RFP 13 seeks "All documents and electronically stored information reflecting, referring or relating to" 13 civil and criminal lawsuits. Dkt. 120-1 at 6. This includes but is "not limited to all investigative files and all transcripts of depositions, hearings and trials in all criminal proceedings, civil proceedings, post-conviction proceedings, and TIRC [Illinois Torture Inquiry Relief Commission]

9

proceedings." *Id*. According to plaintiff, the 13 cases (and others he may "add or subtract to the list") involve potential Rule 404(b) witnesses who were purportedly subjected to similar misconduct by the named defendant officers. Dkt. 120 at 3 (arguing that the cases "involved abuse by the same detectives and the use of similar methods."). Defendants object that the request is overly broad and burdensome but say they are willing to consider a "reasonably narrowed" version. Dkt. 135 at 4-8.

The Court agrees with defendants that, as written, RFP 13 is overbroad and not proportional to the needs of this case. Indeed, it seeks every single piece of paper and electronic record for 13 lawsuits with no effort to identify specific documents or categories of documents that are reasonably likely to be relevant here. Though plaintiff echoes defendants' willingness to compromise, Dkt. 140 at 2, the request before the Court contains no limitations of any kind. And contrary to plaintiff's assertion, none of the cases he cites supports ordering production of the vast array of documents that he is seeking. *Compare Batchelor v. City of Chicago*, No. 18 CV 8513, 2020 WL 13647794, at *5 (N.D. Ill. Nov. 17, 2020) (ordering production of documents related to polygraph examinations conducted by three named defendants over a five-year period); *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993) (judge erred by failing to admit at trial testimony from two witnesses who claimed that Jon Burge beat them days before he allegedly beat the plaintiff); *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3840336, at *4 (N.D. Ill. Aug. 30, 2011) (declining to bar in limine testimony from an individual who claimed

10

that defendant officers coerced a confession out of him two months before they allegedly coerced a confession from the plaintiff).

Plaintiff's motion to compel as to RFP 13 is denied without prejudice. Plaintiff may renew the motion if necessary, but only after revising the request to seek a narrowly tailored category of specific documents and meeting and conferring with opposing counsel.

### B.    RFP 14

RFP 14 seeks "Any and all transcripts of depositions, hearings, trials, and any other proceedings containing the testimony of Richard Vallandigham, John Paladino, Michael Duffin, Lee Almaza, Victor Breska, Thomas Ptak, Robert Kocan, Dennis Taylor and John Dillon." Dkt. 120-1 at 6. Plaintiff acknowledges the breadth of the request given the individual defendants' lengthy careers but argues, without supporting authority, that defendants are required to make reasonable efforts to locate and produce the documents. Dkt. 120 at 7-8; Dkt. 140 at 5.

Once again, the Court finds that the request is overly broad on its face in that it seeks the entire universe of transcripts for every single proceeding in which each defendant provided testimonial evidence. Plaintiff's motion to compel as to RFP 14 is denied without prejudice. Plaintiff may renew the motion if necessary, but only after revising the request to seek a narrowly tailored category of specific transcripts and meeting and conferring with opposing counsel.

11

## **CONCLUSION**

For the reasons stated above, plaintiff's motion to compel [120] is denied and plaintiff's motion for protective order [121] is granted in part and denied in part.

**So Ordered.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 8/26/2025