**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-00694 |
| v. | ) | |
| | ) | Judge Jeremy C. Daniel |
| CITY OF CHICAGO, et al., | ) | Magistrate Judge Jeannice W. Appenteng |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Marshall filed this civil rights lawsuit alleging that he served 30 years in prison for a sexual assault and murder that he did not commit. He claims that police officers under the command of Jon Burge tortured him at Area 3 in Chicago and coerced him into confessing to the crimes. Currently before the Court are plaintiff's motion for protective order relating to privileged documents that were inadvertently produced by the Office of the Cook County Public Defender [145], and defendants' cross-motion to compel production of those documents [158]. For reasons stated here, plaintiff's motion is granted and defendants' cross-motion is granted in part and denied in part.

## BACKGROUND[1]

The Office of the Cook County Public Defender (the "CCPD") represented plaintiff in the criminal case underlying the instant case. During discovery in this case, and in response to a document subpoena from defendants, the CCPD

---

[1] For ease of reference, page numbers for all briefs and exhibits are drawn from the CM/ECF docket entries at the top of the filed document.

inadvertently produced documents relating to work performed by a clinical social worker that the CCPD retained to develop mitigation evidence in plaintiff's criminal case.[2] Those documents included the social worker's notes reflecting interviews she conducted with plaintiff and other mitigation witnesses (the "social worker documents").

Plaintiff argues that the social worker documents are privileged and should be destroyed. Defendants argue that plaintiff has waived any privilege by failing to produce a proper privilege log. Defendants also contend that plaintiff expressly or impliedly waived the attorney-client privilege, and that they have a substantial need for information protected by the work product privilege. As discussed below, the Court is largely unpersuaded by defendants' arguments. Accordingly, defendants must provide plaintiff with written certification that all the inadvertently produced social worker documents have been collected and destroyed. Further, as the custodian of the documents defendants seek to compel, the CCPD shall produce to defendants an appropriate privilege log and unredacted copies of any portion(s) of the documents that reflect material related to plaintiff's *Brady* claim as set forth in this opinion.

---

[2] Plaintiff's counsel began developing mitigation evidence in response to the State's assertion that it would seek the death penalty. Dkt. 167 at 6. Since the State ultimately decided not to pursue a death sentence, the social worker never prepared a final report, she did not testify, and her work was never produced in the underlying criminal case. *Id.*

**DISCUSSION**

## I.      Plaintiff's Motion for Protective Order

In July 2025, defendants received the mistakenly-produced social worker documents from CCPD, Bates-stamped them, and provided them to plaintiff, among others. Dkt. 145 at 4; Dkt. 159-9; Dkt. 159-10 at 4. On July 22, 2025, plaintiff emailed defendants explaining that the production by the CCPD was inadvertent and demanded defendants return, sequester and/or destroy the documents and not use or disclose their contents. Dkt. 145-4. A CCPD representative likewise emailed defendants confirming the production was inadvertent and improper. Dkt. 145-5.

Defendants acknowledged plaintiff's claw-back request and stated, "we have been sequestering" the materials. Dkt. 145-6. However, on August 22, 2025, defendants sent a "Safe Harbor" letter to plaintiff asserting that based on a review of the clawed-back documents, defendants believed that plaintiff's first amended complaint contains material misstatements in violation of Rule 11. Dkt. 145-7; Dkt. 158-3. Plaintiff viewed this letter as an impermissible use of the inadvertently produced documents and on August 25, 2025 filed the instant motion to preclude defendants from further use or disclosure of the information contained in the social worker documents. Dkt. 145.

Rule 26(b)(5)(B) informs this dispute and provides that, "[i]f information produced in discovery is subject to a claim of privilege … the party making the claim may notify any party that received the information of the claim and the basis for it." FED. R. CIV. P. 26(b)(5)(B). Further, after notification, the receiving party

3

"must promptly return, sequester, or destroy the specified information and any copies it has, [and] must not use or disclose the information until the claim is resolved." On July 22, 2025, plaintiff made defendants aware of his privilege claim over the inadvertently produced documents in his claw-back email. The parties' instant motions (both of which seek determination of plaintiff's privilege claim) make plain that the privilege dispute remains live. Accordingly, since July 22, 2025 at the earliest, defendants were barred from using or disclosing the inadvertently produced documents and the information contained therein.[3]

For these reasons, plaintiff's motion to preclude defendants from using the inadvertently produced social worker documents or the information contained in them is granted. However, plaintiff's request to order defense counsel to identify "all individuals who have seen the documents or who have been told of information contained in them," Dkt. 145 at 8, is denied. As noted above, the Rule requires only that the receiving party "promptly return, sequester, or destroy the specified information and any copies it has … [and] take reasonable steps to retrieve the information if the party disclosed it before being notified." FED. R. CIV. P. 26(b)(5)(B). To the extent defendants have not already done so, they shall collect and destroy all copies of the inadvertently produced materials and provide plaintiff with written certification of the destruction.

---

[3] Defendants' August 22, 2025 Rule 11 letter was sent prior to this Court's resolution of the privilege dispute and therefore inappropriately relies on and cites to the clawed-back materials. Despite defendants' arguments to the contrary, which fail to offer any support in the Rules or relevant case law, defendants were not permitted to rely on or reference information contained in the allegedly privileged materials without court authorization.

## II.     Defendants' Motion to Compel

In their cross-motion, defendants seek to compel production of the social worker documents the CCPD inadvertently produced and plaintiff clawed-back. Dkt. 158. Though defendants' motion seeks relief from plaintiff, it is the CCPD, the recipient of the Rule 45 subpoena, that may be compelled to produce the social worker documents. Defendants do not dispute that the documents are protected by the attorney-client privilege and/or the work product doctrine. *See, e.g., Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007) (attorney-client privilege protects communications with attorney and the attorney's agents, including retained experts); *U.S. v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007) (work product privilege protects documents "prepared by an attorney or the attorney's agent to analyze and prepare the client's case."). Instead, defendants argue plaintiff waived the privileges in various ways and further that defendants have a substantial need for documents covered by the work product doctrine. Dkt. 158 at 18-30; Dkt. 174 at 7-15.

### A.     Waiver Due to Inadequate Privilege Log

The Court first addresses defendants' argument that *plaintiff* has waived privilege by failing to submit a proper privilege log concerning the social worker documents. Dkt. 158 at 14-17. However, the responsibility for preparing a privilege log falls to the party producing documents in response to the subpoena, in this case the CCPD. *See Sioux Steel Co. v. Prairie Land Millwright Servs., Inc.*, No. 16 CV

2212, 2020 WL 2900834, at *2 (N.D. Ill. June 3, 2020) (requiring privilege log in the context of a Rule 45 subpoena).[4]

As noted, a CCPD representative emailed defendants on July 22, 2025 confirming that production of the social worker documents was inadvertent and improper. Dkt. 145-5 (characterizing the production as "absolutely an oversight" and stating that the office "should have pulled the folder that was marked PRIVILEGED."). By taking this position, the CCPD triggered its obligation to tender a privilege log to defendants. Since the CCPD has not produced a privilege log covering the social worker documents to date, it shall do so by March 20, 2026. The log shall comply with the requirements in this District. *See Urban 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020) (quoting *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013)) ("Courts in this district have required that a privilege log identify for each separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged."); *Belcastro*

---

[4] Defendants argue that plaintiff expressly waived the privilege over all the social worker documents by failing to assert privilege over a January 6, 1989 letter that Mr. Stralka sent to First Assistant Public Defender Rita Fry requesting that the CCPD retain a social worker for plaintiff's case. Dkt. 158 at 21-22. Not so. Plaintiff asserted privilege over the 42 pages of interview notes as well as 14 additional documents. Dkt. 177 at 2 (asserting privilege over "56 pages of material . . . relating to work performed by a clinical social worker") (emphasis added). Additionally, as the producing party, the initial responsibility for asserting privilege and preparing a log belongs to the CCPD. In any event, the letter between members of plaintiff's legal team is protected from disclosure as work product. *See, e.g., Guster-Hines v. McDonald's USA, LLC*, No. 2024 WL 5457437, at *3 (N.D. Ill. July 11, 2024) (the work product privilege protects documents "prepared in anticipation of litigation or for trial" by a party's attorney, agent or representative).

*v. United Airlines, Inc.*, No. 17 CV 1682, 2021 WL 1531601 (N.D. Ill. Apr. 19, 2021) ("[T]he party must establish that the privilege applies on a document-by-document basis.").

Defendants argue that the appropriate sanction for the CCPD's delay in producing a privilege log is waiver. The Court disagrees. "The district court enjoys considerable discretion in determining whether . . . it will permit a party to supplement its log to correct any inadequacies before finding a waiver." *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 CV 3166, 2023 WL 3200236, at \*5 (N.D. Ill. May 2, 2023). Moreover, "[a]n order that privileged documents be disclosed as a sanction is appropriate . . . only if the party that authored the log has displayed willfulness, bad faith or fault." *Muro v. Target Corp.*, 250 F.R.D. 350, 365 (N.D. Ill. 2007) (citing *Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Society of U.S.*, 406 F.3d 867, 877 (7th Cir. 2005)). Defendants have not proffered, and the Court finds no evidence of willfulness, bad faith, or fault in this record warranting the harsh sanction of waiver. Defendants' motion to compel production of the social worker documents based on the inadequate privilege log is denied.

### B.   Waiver of the Attorney-Client Privilege

The attorney-client privilege can be waived either explicitly or by implication. *Cage v. Harper*, No. 17 CV 7621, 2019 WL 6911967, at \*1 (N.D. Ill. Dec. 19, 2019) (citing *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987)). Here, defendants argue that both waivers apply.

7

### 1. Express Waiver

Express waiver occurs where "information that would otherwise be privileged is not kept confidential." *Cage*, 2019 WL 6911967, at *1 (quoting *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 711 (N.D. Ill. 2015)). "Any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Powers v. Chicago Transit Authority,* 890 F.2d 1355, 1359 (7th Cir.1989) (citing *U.S. v. Buljubasic,* 808 F.2d 1260, 1268 (7th Cir.1987)). Further, "[v]oluntary disclosure of privileged information about a matter waives the privilege as to all information on the same subject matter." *Fujisawa Pharmaceutical Co., v. Kapoor,* 162 F.R.D. 539, 541 (N.D. Ill. 1995).

Defendants argue that plaintiff expressly waived his attorney-client privilege over the inadvertently produced social worker documents by "reveal[ing] the substance of the communications" in (1) an affidavit in support of plaintiff's request for post-conviction relief, (2) plaintiff's original and amended post-conviction briefs, and (3) plaintiff's First Amended Complaint. Dkt. 158 at 18-20; Dkt. 174 at 7-9. According to defendants, plaintiff repeatedly asserted in those filings that he told his attorney he was innocent of the charges against him, opening the door to disclosure of all privileged communications with counsel "and any agent working on that counsel's behalf" on the subject matter of his sexual relations with the victim and involvement in her murder. *Id*.

8

This argument is unpersuasive. First, plaintiff did not affirmatively disclose the substance of any communications with counsel. In the First Amended Complaint, plaintiff merely stated that he "maintained his innocence" and did not commit any crimes. Dkt. 79 ¶¶ 1, 29. In the affidavit and post-conviction petitions, plaintiff reiterated that he "maintained his innocence" and recounted the following exchange with his criminal attorney: "After I was moved to Cook County Jail, I had a brief meeting with my public defender, Paul Stralka, during which I told him about the abuse I endured. I also told him that I did not have sex with Theresa and that I did not kill her." Dkt. 159-17, 2/9/2017 Affidavit, ¶ 22; Dkt. 159-18 ¶¶ 23, 62; Dkt. 159-19 ¶¶ 23, 62.

Second, these protestations of innocence in no way evidence an attempt by plaintiff to rely on certain conversations with counsel while shielding others. *See Patrick*, 154 F. Supp. 3d at 711 (express waiver is intended to prevent a party from selectively disclosing information). Significantly, the statements made in the post-conviction petitions related solely to an ineffective assistance of counsel claim that plaintiff ultimately did not pursue. *See infra* at 11-13. Given these circumstances, there is no merit to defendants' assertion that plaintiff expressly waived privilege over all communications with his attorney (much less his whole "legal team") relating to his involvement (or lack thereof) in the underlying crimes.

### 2. Implied Waiver

Implied waiver occurs when "a client asserts claims or defenses that put his or her attorney's advice 'at issue' in the litigation." *Cage*, 2019 WL 6911967, at \*1

9

(citing *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001)). Defendants argue that plaintiff has implicitly waived the attorney-client privilege by placing his attorney's advice "at issue" in the following ways: (1) by alleging that he told his former attorneys that he was innocent of the underlying crimes; (2) by asserting a claim of ineffective assistance of counsel; and (3) by asserting a *Brady* claim. The Court considers each argument in turn.

### a. Claims of Innocence

Defendants first argue that plaintiff placed his attorney's advice at issue by repeating allegations of police abuse and claims of innocence to his attorneys over the course of his criminal case. Dkt. 158 at 23 (citing Dkt. 79, First Amended Complaint, ¶ 29); Dkt. 174 at 9-11. Defendants believe plaintiff is attempting to obtain a strategic advantage in this case by arguing that his claims of innocence and torture should be credited because he conveyed them to his defense attorney, while at the same time withholding evidence in the social worker documents that he confessed to his legal team that he committed the crimes. Dkt. 158 at 6, 22-25; Dkt. 174 at 10.

Courts have made clear that "[m]erely asserting a claim or defense to which attorney-client communications are relevant, without more, does not constitute a waiver of attorney-client privilege." *Cage*, 2019 WL 6911967, at *1. Rather, at-issue waiver occurs when a party affirmatively puts at issue "the specific communication, document, or information to which the privilege attaches." *Id*. at *2. For reasons stated earlier, plaintiff's general allegation in the First Amended Complaint that he

"maintained his innocence" to counsel does not place specific privileged communications at issue in this case. *See Matichak v. Joliet Park Dist.*, No. 16 CV 5877, 2016 WL 11706697, at *4 (N.D. Ill. Oct. 21, 2016) (mere denials of alleged misconduct insufficient for at-issue waiver). Moreover, the argument that plaintiff purportedly "confessed" is premised on defendants' interpretation of the contents of privileged materials they should never have seen.

On the evidence presented, this Court declines to find that plaintiff impliedly waived the attorney-client privilege by asserting his innocence to counsel. *See Cage*, 2019 WL 6911967, at *1 (quoting *Silverman v. Motorola, Inc.*, No. 07 CV 4507, 2010 WL 2697599, at *1 (N.D. Ill. July 7, 2010)) ("The 'at issue' waiver doctrine is limited and 'should not be used to eviscerate the attorney-client privilege.'").

### b. Ineffective Assistance Claim

Next, defendants argue that plaintiff impliedly waived the attorney-client privilege by making a claim against Mr. Stralka for ineffective assistance of counsel. Dkt. 158 at 25-26; Dkt. 174 at 11-13. "It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." *Cantu v. United States*, No. 19-CR-40066-JPG, 2022 WL 16791706, at *1 (S.D. Ill. Nov. 8, 2022); *Patrick*, 154 F. Supp. 3d at 712-15 (the waiver applies in the state proceedings and subsequent federal proceedings). Here, plaintiff asserted in his initial post-conviction petition that Mr. Stralka was ineffective based on 14 alleged "failures," including conceding at trial that plaintiff

had committed the charged offenses. Dkt. 158 at 26; Dkt. 159-18 ¶ 233. Defendants contend that this constitutes a waiver of the privilege as to all communications plaintiff had with counsel on the entire subject matter of the 14 topics. Dkt. 174 at 12-13.

Plaintiff does not disagree that waiver may occur when a criminal defendant files a claim for ineffective assistance of counsel. Rather, plaintiff insists that he ultimately preserved his privilege by abandoning the ineffective assistance claim in his amended petition. Dkt. 167 at 23 (citing *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003)) ("the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition."). Defendants reject the idea that plaintiff "abandoned" his claim, noting that the amended petition states the claim "was previously dismissed." Dkt. 159-19 ¶ 241; Dkt. 174 at 11. Defendants argue dismissal of an ineffective assistance claim does not constitute a retraction or undo a waiver. Dkt. 174 at 12 (citing *Patrick*, 154 F. Supp.3d at 715) (finding waiver despite state court's dismissal of the plaintiff's ineffective assistance of counsel claim as untimely).

Neither party has attached documents from the underlying criminal case conclusively establishing how or why plaintiff did not end up pursuing the ineffective assistance claim. In defendants' initial brief, however, they appear to concede that plaintiff's ineffective assistance claim "was withdrawn" in response to a motion to dismiss filed by the State. Dkt. 158 at 26 n.3. Moreover, the *Patrick* case defendants rely on is distinguishable. The plaintiff there conceded that he had

12

waived privilege for purposes of the state court litigation, 154 F. Supp. 3d at 712, and signed two affidavits disclosing the substance of conversations he had with his attorney about his desire to testify at the trial, along with the attorney's specific explanations for why he could not. *Patrick v. City of Chicago*, No. 14 CV 3658, Dkts. 95-4, 95-5. The court held that such "voluntary disclosures" operated as a waiver as to those communications. *Patrick*, 154 F. Supp. 3d at 715. Here, plaintiff's affidavit reveals nothing substantive about his conversations with counsel or counsel's response. Dkt. 159-17 ¶ 22 (stating that plaintiff told his attorney "about the abuse [he] endured" and that he "did not have sex with" and "did not kill" his stepdaughter).

For purposes of this motion, the Court declines to find that plaintiff has impliedly waived the attorney-client privilege simply by raising it at one point during the post-conviction proceedings. *See United States v. Palivos*, No. 00 CR 1065-5, 2010 WL 3190714, at *7 (N.D. Ill. Aug. 12, 2010) (if the plaintiff "does not waive the privilege, then his ineffective assistance claim will be deemed withdrawn."). Defendants' motion to compel on that basis is denied.

### c. *Brady* Claim

Finaly, defendants argue that plaintiff implicitly waived the attorney-client privilege by making a *Brady* claim in this case that has placed his attorney's advice at issue. Dkt. 158 at 28 (citing *Jackson v. City of Chicago*, No. 03 CV 8289, 2006 WL 2224052, at *7 (N.D. Ill. July 31, 2006) (implied waiver occurs when "the client's claim or defense puts the attorney's advice at issue.")); Dkt. 174 at 13-14. To prove a

*Brady* violation, plaintiff must establish three elements: "(1) the evidence at issue is favorable to [him], either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued - in other words, 'materiality.'" *Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008). Evidence is "suppressed" for purposes of the second element when: "(1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Id.* at 567. "Though advancing a *Brady* claim does not '*per force* constitute[ ] a waiver of the attorney-client privilege,' . . . waiver may occur if the plaintiff places 'the extent of [his] and his counsel's knowledge of information withheld during the initial criminal trial at issue.'" *Taylor v. City of Chicago*, No. 14 CV 737, 2015 WL 5611192, at *2 (N.D. Ill. Sept. 22, 2015) (quoting *Jackson*, 2006 WL 2224052, at *7, and *Cannon v. Polk County/Polk County Sheriff*, No. 3:10-CV-224-HA, 2013 WL 1840343, at *3 (D. Or. Apr. 30, 2013)).

In his first amended complaint, plaintiff alleges that defendants coerced him into falsely confessing to the crimes using torture, defendant Detective Duffin "planted" the murder weapon to frame plaintiff, and defendants deliberately withheld this exculpatory evidence "thereby misleading and misdirecting Plaintiff's criminal prosecution." Dkt. 79 ¶¶ 66, 174-76. Defendants argue that by making these allegations, plaintiff placed his attorney's knowledge of that alleged wrongdoing at issue in the case and waived privilege over not only "any

communication between Marshall and his legal team on the topic of physical abuse and the murder weapon," Dkt. 158 at 28, but also "[a]ny communication between Plaintiff and his legal team on his confession, sexual relationship with Theresa, involvement in her murder, and the murder weapon." Dkt. 174 at 14.

In support, defendants rely on *Taylor*, where the plaintiff alleged the defendants violated *Brady* by withholding evidence that the defendant officers coerced plaintiff into confessing to murder, and by failing to disclose the existence of an alibi witness. 2015 WL 5611192, at *3. When deposed, the plaintiff testified that he spoke with his criminal defense attorney about both issues but the attorney refused to answer any related questions on privilege grounds. *Id.* at *3, *4. The defendants moved to compel and the court found that the plaintiff had impliedly waived the attorney-client privilege. As the court explained, since the *Brady* claims placed at issue the attorney's knowledge of alleged police abuse and an alibi witness, the privilege did not shield communications on those matters. *Id.* at *4, *6.

This Court finds the reasoning in *Taylor* persuasive. Here, plaintiff alleges defendants withheld exculpatory evidence regarding his alleged coerced confession and planting evidence. By doing so, plaintiff placed at issue his attorney's knowledge of these two allegedly exculpatory topics. Accordingly, to the extent the CCPD documents reflect communications concerning these topics, those portions of the documents must be produced. Communications on all other topics, however, are privileged and protected from production. Defendants' motion to compel based on the *Brady* claims is therefore granted in part and denied in part.

### C. Waiver of Work Product Protection

Defendants argue that even if plaintiff has not waived the attorney-client privilege, they have a substantial need for the social worker documents that outweighs any work product privilege. Dkt. 158 at 28; Dkt. 174 at 14-15.[5]

"In limited situations documents protected as [fact] attorney work product are nonetheless discoverable if a party can establish a 'substantial need' for the documents and cannot obtain equivalent materials without 'undue hardship.'" *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (quoting FED. R. CIV. P. 26(b)(3)(A)(ii)). *See also Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1023 (7th Cir. 2012) ("'Fact' work product is discoverable in the rare case where [a] party makes the 'substantial need' showing."). Defendants contend that the requirements are satisfied here because plaintiff already waived the attorney-client privilege over these materials, Mr. Stralka is deceased, and "it is unlikely the clinical social worker will have any independent memory of their interaction with Plaintiff 35 years later, thus removing any alternative means to get information relating to conversations between Plaintiff and his legal team." Dkt. 174 at 15.

The Court agrees that plaintiff's limited waiver of the attorney-client privilege extends to work product protection, which "protects many of the same interests as the attorney/client privilege." *Patrick*, 154 F. Supp. 3d at 716 ("For the same reasons that the attorney-client privilege has been waived, that waiver

---

[5] Defendants' discussion of the standard for assessing whether a party has a particularized need for documents protected by the deliberative process privilege is misplaced and disregarded. Dkt. 58 at 28-29. Plaintiff is not asserting deliberative process privilege over the materials at issue.

16

extends to those documents" protected as work product that discuss the same topics). That is, plaintiff has waived privilege over fact work product that reveals communications with counsel regarding the alleged coerced confession and alleged planted evidence.

Defendants' arguments for extending the waiver even further are not persuasive. First, defendants offer no explanation for why Mr. Stralka's death has any bearing on their purported substantial need for privileged documents created by him and his legal team while representing plaintiff in the criminal case. Indeed, such a conclusion would greatly undermine the very purposes of the work product doctrine, namely, "(1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E.*, 600 F.3d at 622.

Second, regarding the social worker as a forgetful witness, the "possibility of a faded memory is not sufficient to overcome work-product protections." *Walker v. White*, No. 16 CV 7024, 2019 WL 1953124, at *7 (N.D. Ill. May 2, 2019). And defendants fail to cite any authority allowing them to obtain from an attorney's agent documents and information they are prohibited from obtaining directly from the attorney. Accordingly, the waiver does not extend beyond the context of materials related to plaintiff's *Brady* claim as set forth in this opinion.

17

**CONCLUSION**

For the reasons stated above, plaintiff's motion for protective order [145] is granted and defendants' cross-motion to compel [158] is granted in part and denied in part. By March 20, 2026, defendants shall certify to plaintiff in writing that they have collected and destroyed all copies of the inadvertently produced CCPD social worker documents. By March 20, 2026, the CCPD shall produce to defendants (1) a privilege log for the social worker documents in accordance with this opinion, and (2) unredacted copies of any portion(s) of the social worker documents that reflect communications between plaintiff and his attorney regarding the alleged coerced confession or the alleged planting of evidence, to the extent such communications exist.

**So Ordered.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 3/6/2026

18